# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

   v.

APPROXIMATELY $10,703.71, IN U.S. CURRENCY SEIZED FROM BANK OF THE SIERRA ACCOUNT NUMBER 1420468170, et al.

          Defendants.

_____/

**CASE NO. 1:12-cv-00396-LJO-SKO**

**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S EX PARTE APPLICATION FOR DEFAULT JUDGMENT AND FINAL JUDGMENT OF FORFEITURE BE GRANTED**

**(Doc. 21)**

**OBJECTIONS DUE WITHIN 14 DAYS**

## I.    INTRODUCTION

In this *in rem* civil forfeiture action, Plaintiff United States of America (the "Government" or "Plaintiff") filed an Ex Parte Application for Default Judgment and Final Judgment of Forfeiture (the "Application") seeking entry of a default judgment against the interests of Mark Bagdasarian and Maureen Bagdasarian, and a final judgment of forfeiture against all known and unknown potential claimants to the Approximately $10,703.71 in U.S. Currency Seized from Bank of The Sierra Account Number 1420468170, and the Approximately $118.91 in U.S. Currency Seized From Union Bank Account Number

1

1540018207 (together the "Defendant Funds"). No opposition to the Application has been filed, and the time to file an opposition has expired. The Court reviewed the motion and supporting document and found the matter suitable for decision without argument pursuant to Local Rule 230(g); thus the October 25, 2017, hearing was vacated. (Doc. 22.) For the reasons set forth below, the undersigned RECOMMENDS that the Government's Application be GRANTED.

## II. FACTUAL BACKGROUND[1]

On March 15, 2012, the Government filed a verified complaint alleging that, in 2011, the Drug Enforcement Administration and the Fresno County Sheriff's Department initiated an investigation into the illegal sales of marijuana at marijuana retail storefronts operating in Fresno County, California. (Doc. 1 ("Compl.") ¶ 7.) The investigation revealed Mark Bagdasarian was the primary operator and Executive President of Buds 4 Life, a marijuana retail business. (*Id.*) The investigation determined that Mark Bagdasarian, Ryan Bagdasarian, and others involved with Buds 4 Life, were operating two "cash-only" marijuana retail storefronts: one in Tarpey Village located at 3705 N. Clovis Avenue (hereafter "Buds 4 Life"), and one at 16906 Friant Road in Friant, California (hereafter "Buds 4 Life North"). *Id.*

In an interview with Mark Bagdasarian by law enforcement officers, Mr. Bagdasarian admitted that he was the Executive President of Buds 4 Life, a marijuana retail store, and that he established Buds 4 Life with his son, Ryan Bagdasarian. (Compl. ¶ 8.) Mark Bagdasarian identified others involved with his business operations and admitted to the location of his indoor warehouse marijuana cultivation operation. (*Id.*) Mark Bagdasarian admitted that at the end of each day a portion of the marijuana sale proceeds were deposited in a safe located at 5777 E. Shields Avenue but then were taken to his personal residence where he and his wife, Maureen Bagdasarian re-counted the money. (*Id.*) Mark Bagdasarian estimated that between February and May 2011, he took home an average of $30,000 to $50,000 per day of marijuana sale proceeds, and was fully aware that his business violated federal law. (*Id.*)

---

[1] The facts set forth in this factual background section are taken from Plaintiff's verified complaint filed March 15, 2012. (Doc. 1 ("Compl."))

On June 1, 2011, the Drug Enforcement Administration, Internal Revenue Service, Fresno County Sheriff's Department and other state, local, and federal law enforcement agencies executed state search warrants at seven different locations associated with Buds 4 Life, including: 3705 N. Clovis Avenue, 2675 Shirley, 6129 N. Mitre, 5771 and 5777 E. Shields Avenue. (Compl. ¶ 9.) These searches resulted in the total seizure of approximately 99 kilograms of processed marijuana, 3,669 live marijuana plants, 309 grams of concentrated cannabis, hundreds of units of edibles/drinks containing tetrahydrocannabinol (THC)[2], over $500,000 in U.S. currency, a Harley-Davison motorcycle, and a 2008 Toyota Scion automobile. (*Id.*)

On October 4, 2011, law enforcement members of the Drug Enforcement Administration, Internal Revenue Service, and the Fresno County Sheriff's Department executed a federal search warrant at Buds 4 Life North located at 16906 N. Friant Road, Friant, California. (Compl. ¶ 11.) During the search of Buds 4 Life North, law enforcement officers located and seized approximately 25.25 pounds of processed marijuana, approximately 139 bottles of THC beverages, approximately 222.64 pounds of THC edibles, approximately 1.93 pounds of THC Joint/Muscle Rub, approximately 0.53 pounds of marijuana hash, approximately 37.17 pounds of THC ice cream, approximately 3.17 pounds of THC oil, approximately 2.75 pounds of marijuana plants, multiple loaded firearms, miscellaneous Buds 4 Life documents, and approximately $3,125.00 in U.S. currency. (*Id.* ¶ 12.) The narcotics-detecting canine "Tag" gave a positive alert to the presence of the odor of narcotics on the seized currency. (*Id.*) Law enforcement arrested Ryan Bagdasarian at his residence in Clovis, California in connection with this case. (*Id.* ¶ 16.)

Other than a record associated with Buds 4 Life, the California Employment Development Department has no record of employment or wages for the fourth quarter of 2010

---

[2] Tetrahydrocannabinol is the physiologically active component in cannabis.

through the reporting period in 2011 for either Mark Bagdasarian or Ryan Bagdasarian.  (*Id.* ¶ 19.)

On October 3, 2011, a federal seizure warrant was issued for all funds maintained in Bank of the Sierra account number 1420468170, held in the name of Mark Bagdasarian, doing business as Buds 4 Life incorporated and all funds maintained in Union Bank account number 1540018207, held in the name of Mark Bagdasarian, doing business as Clear Bumper.  (Compl. ¶ 20.)  Agents subsequently executed the seizure warrants at Bank of the Sierra and Union Bank and seized approximately $10,703.71 in U.S. currency from Bank of Sierra account number 1420468170 and approximately $118.91 in U.S. currency from Union Bank account number 1540018207.  (*Id.* ¶ 21.)

Buds 4 Life is a cash only business, meaning payment for marijuana can only be made via cash payment.  (Compl. ¶ 22.)  Based on statements made by Mark Bagdasarian and Ryan Bagdasarian, all funds held in the Buds 4 Life bank account, Account number 1420468170 at Bank of Sierra, are the proceeds from the sale of marijuana.  (*Id.*)  Mark Bagdasarian opened Account 1420468170 titled in the name of Buds 4 Life, at Bank of the Sierra in June 2010.  (*Id.* ¶ 23.)  In February 2011, Mark Bagdasarian installed an Automated Teller Machine ("ATM") in the lobby of the Buds 4 Life locations.  (*Id.*)  On a near daily basis, the ATM machine was loaded (meaning cash is placed into the machine) by Mark Bagdasarian with cash he obtained via the sale of marijuana from Buds 4 Life.  (*Id.*)  Since Buds 4 Life is a cash-only business, customers who visit Buds 4 Life without cash can use the ATM to withdraw funds, then use those funds to purchase marijuana.  (*Id.* ¶ 24.)  When monies are withdrawn from the ATM, an electronic wire is generated, in which the ATM contacts the cardholder's bank to let the bank know the transaction is taking place.  (*Id.*)  If there are sufficient funds in the cardholders account for the withdrawal request, the transaction will be completed by electronically pulling the funds from the cardholders account and sending those funds electronically directly to Buds 4 Life Account 1420468170 located at Bank of the Sierra.  (*Id.*)

From February 2011 through May 31, 2011, approximately $439,120.00 was deposited to Account 1420468170 at Bank of the Sierra from electronic wires directly attributable to the use of the ATM at Buds 4 Life. (Compl. ¶ 25.) Review and analysis of the pertinent bank records, reveals that the only deposits into the Buds 4 Life Account 1420468170 were the electronic ATM transactions. (*Id.* ¶ 26.) As stated above, Buds 4 Life is a cash-only business, and cash drug proceeds were used by Mark Bagdasarian to "stock" the ATM machine in the Buds 4 Life lobby. (*Id.*) When the "dirty" cash (i.e., the drug proceeds) that had been stocked into the machine was withdrawn by customers using the Buds 4 Life ATM, Mark Bagdasarian replenished the ATM with further cash drug proceeds; therefore, drug proceeds were used in all transactions involving the ATM and the ATM assisted Mark Bagdasarian in disguising and concealing the true nature of the monies in Account 1420468170. (*Id.*) This is so because, when the "dirty" cash was withdrawn by the customer, "clean"-appearing funds were electronically pulled out of the cardholder's account and immediately deposited directly into the Buds 4 Life Account 1420468170 located at Bank of the Sierra, thereby "washing" the stocked "dirty" funds and concealing their true nature and source. (*Id.*) As such, the funds found in Account no. 1420468170 would appear "clean" to the naked eye, as coming from other bank sources, such as Bank of America, Wells Fargo Bank, etc. (depending on the bank of the customer using the Buds 4 Life ATM), when in fact, the funds were directly traceable to proceeds from the sale of marijuana. (*Id.*)

Account no. 1540018207 was opened at Union Bank by Mark Bagdasarian on September 29, 2007 in the name of Clear Bumper. (Compl. ¶ 27.) Clear Bumper, a company previously established by Mark Bagdasarian, purports to be a company that applies film strips to a car's vulnerable scratch area to keep them looking clean and new. (*Id.*) However, Mark Bagdasarian admitted that Clear Bumper has been inactive since the opening of the Buds 4 Life marijuana store in April 2010. (*Id.*)

From July 2010 through at least the end of May 2011, Buds 4 Life wrote checks totaling $32,011.00 to "Clear Bumper." (Compl. ¶ 28.) Those checks were then deposited into the

Union Bank Account 1540018207 and then in turn, Mark Bagdasarian wrote numerous checks from the Clear Bumper account to rent storage warehouse units at 5771 and 5777 E. Shields Avenue, Fresno, California—the location of the indoor marijuana grow operated by Mark Bagdasarian and others connected to Buds 4 Life. (*Id.*) Per the manager of the storage warehouse unit, the spot was rented by Mark Bagdasarian and was, per the statements made to the manager, intended to be the location to keep supplies for an automobile business Mark Bagdasarian was operating (presumably Clear Bumper). (*Id.* ¶ 29.)

However, on June 1, 2011, law enforcement executed a search warrant at the storage warehouse units at 5771 and 5777 E. Shields Avenue in Fresno, California. (Compl. ¶ 30.) At the 5771 E. Shields location agents discovered a sophisticated indoor marijuana grow which contained approximately 485 marijuana plants. (*Id.*) At the 5777 E. Shields location, agents located $63,677 in cash located inside a safe, which, per Mark Bagdasarian, represented proceeds from the sales of marijuana. (*Id.*) Additionally, agents found approximately 3,156 marijuana plants, 106 pounds of processed marijuana. (*Id.*) Neither storage warehouse unit contained any items related to an automotive business or Clear Bumper as claimed by Mark Bagdasarian. (*Id.*)

### III.     PROCEDURAL BACKGROUND

On October 13, 2011, a Grand Jury in the Eastern District of California indicted Mark Bagdasarian and Ryan Bagdasarian, for narcotics violations of 21 U.S.C. §§ 841(a)(1) and 846, and other related charges. (Compl. ¶ 32.) On March 15, 2012, the Government filed a civil action for forfeiture *in rem* pursuant to 21 U.S.C. § 881(a)(6) of the Defendant Funds. (*See* Doc. 1.) Based on the allegations set forth in the Complaint, the Clerk of the Court issued a Warrant for Arrest of Articles *In Rem* for the Defendant Funds. (Doc. 5.) The United States Marshals Service executed the Warrant for Arrest on the Defendant Funds on April 20, 2012. (*See* Doc. 6.)

The Government published public notice of the action and the arrest of the Defendant Funds via the official internet government forfeiture site www.forfeiture.gov for at least 30

consecutive days. (*See* Doc. 10.) Publication in a manner consistent with Local Rule 500(d) via Supplemental Rule G(4)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereafter "Supplemental Rules") was made beginning March 31, 2012, and proof of such publication was filed with the Court on June 6, 2012. (*See id.*) The United States also caused notice to be delivered to various individuals with a suspected potential interest in the Defendant Funds in a manner reasonably likely to reach them, as follows: On March 30, 2012, the United States served Mark Bagdasarian and Maureen Bagdasarian with notice of this action. (*See* Doc. 18-1, Declaration of Elisa Rodriguez in Support of Request to Clerk for Entry of Default against Mark Bagdasarian and Maureen Bagdasarian ("Rodriguez Decl.") ¶¶ 5–6.) On March 30, 2012, the United States served Anthony P. Capozzi, Esq., defense counsel for Mark Bagdasarian and Ryan Bagdasarian in the related criminal case, *United States v. Mark Bagdasarian, et al.*, 1:11-CR-00352-LJO, with notice of this action. (*Id.* ¶ 7.)

On May 3, 2012, Mark Bagdasarian and Maureen Bagdasarian filed their claim to the Defendant Funds. (Doc. 8.) Mark Bagdasarian and Maureen Bagdasarian filed their answer to the complaint for forfeiture on May 23, 2012. (Doc. 9.)

On June 5, 2017, the criminal case of *United States v. Mark Bagdasarian, et al.*, 1:11-CR-00352-LJO, resolved with Ryan Bagdasarian's guilty plea to Possession of Marijuana with the Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and Mark Bagdasarian's guilty plea to a violation of 18 U.S.C. § 1956(a)(1)(B)(i) – Money Laundering. (*See* Doc. 21 at 6:9–12.)

That same day, on June 5, 2017, Maureen Bagdasarian filed her withdrawal of claim and answer. (Doc. 15.) Mark Bagdasarian filed his withdrawal of claim and answer on June 7, 2017. (Doc. 16.) On September 19, 2017, the Clerk of Court entered default against Mark Bagdasarian and Maureen Bagdasarian. (Docs. 19 & 20.) The Government filed the present Application for default judgment and final judgment of forfeiture on September 25, 2017. (Doc. 21.) No opposition has been filed to the Government's Application.

# IV.    DISCUSSION

## 1.    Legal Standard

The Government seeks judgment against the interests of Mark Bagdasarian and Maureen Bagdasarian, and also seeks final judgment of forfeiture against all other unknown potential claimants.  The Supplemental Rules themselves do not provide a procedure to seek default judgment in an action *in rem*.  However, Supplemental Rule A provides: "The Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules."

Federal Rule of Civil Procedure 55(b)(2) provides that a court has discretion to enter default judgment against a party and provides as follows:

> (2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2).  In considering whether to enter default judgment, courts consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the compliant; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of favoring decision on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–918 (9th Cir. 1987); *United States v. Approximately $30,000.00 in U.S. Currency*, No. 1:13–cv–1542 GSA, 2015 WL 5097707, at *5 (E.D. Cal. Aug. 28, 2015).

*Accord Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

In the context of an *in rem* forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983; the Supplemental Rules; and the Court's Local Rules for Admiralty and *in rem* actions. *See United States v. $191,910.00*, 16 F.3d 1051, 1069 (9th Cir. 1994) (explaining that, because civil forfeiture is a "harsh and oppressive procedure which is not favored by the courts," the Government carries the burden of demonstrating its strict adherence to procedural rules), *superseded by statute on other grounds*.

## 2. Procedural Requirements

### a. Sufficiency of the Complaint

Pursuant to the Supplemental Rules, the Government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp. R. G(2). With regard to the sufficiency of the factual detail of the verified complaint, the Government is not required to show a direct relationship between the proceeds of a drug crime and a specific drug transaction. Rather, circumstantial evidence may support the forfeiture of the proceeds of a drug crime. *See United States v. $30,670.00*, 403 F.3d 448, 467–70 (7th Cir. 2005) (concluding that the totality of the circumstances demonstrated that an airline passenger's cash hoard was connected to drug trafficking and subject to forfeiture); *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (applying totality of the circumstances to determine that cash carried by airline passenger was the proceeds of, or traceable to, an illegal drug transaction); *Approximately $30,000.00 in U.S. Currency*, 2015 WL 5097707, at *6.

Here, the Government contends that the verified complaint establishes circumstantial evidence that the Defendant Funds were furnished or intended to be furnished in exchange for a controlled substance or listed chemical and is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). (*See* Doc. 26 at 6:11–16.) Pursuant to Section 881, the following is subject to forfeiture to the United States:

> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6).

The allegations of the Government's verified complaint provide sufficient circumstantial evidence to reasonably believe that the Defendant Funds constitute "moneys" furnished or intended to be furnished in exchange for a controlled substance or was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq.* The Defendant Funds held in the Buds 4 Life bank account, Account no. 1420468170 at Bank of Sierra, are the proceeds from the sale of marijuana. (Compl. ¶ 22.) Mark Bagdasarian attempted to launder the Defendant Funds through automatic teller machines (ATMs) located in the dispensaries. (*Id.* ¶¶ 23–26.) Further, Buds 4 Life deposited the Defendant Funds into the Union Bank Account 1540018207 in the name of "Clear Bumper," and then in turn, Mark Bagdasarian wrote numerous checks out of the Clear Bumper account in order to rent storage warehouse units at 5771 and 5777 E. Shields Avenue, Fresno, California—the location of the indoor marijuana grow operated by Mark Bagdasarian and others connected to Buds 4 Life. (*Id.* ¶¶ 27–31.) "In the absence of assertion of interests in the Defendant [Funds], the Court will not question the facts supporting its forfeiture . . . ." *Approximately $30,000.00 in U.S. Currency*, 2015 WL 5097707, at *6. The Court therefore finds that the facts, as alleged, provide a sufficient connection between the Defendant Funds and illegal drug activity to support a forfeiture.

### b. Notice by Publication

Subject to certain exceptions not present here, the Supplemental Rules require the Government to publish notice of the forfeiture in a manner that is reasonably calculated to notify potential claimants of the action. Fed. R. Civ. P. Supp. R. G(4)(a)(iv). The content of the notice must describe the property with reasonable particularity, state the times to file a claim and to answer the complaint, and identify the name of the Government attorney to be served with the claim and answer. Fed. R. Civ. P. Supp. R. G(4)(a)(ii)(A)–(C). This notice requirement may be satisfied by posting a notice on an official internet government forfeiture site for at least 30 consecutive days. Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C).

Here, publication occurred on the official internet government forfeiture site (www.forfeiture.gov) for 30 consecutive days. (Doc. 10.) The Government filed a Declaration of Publication stating that notice had been created and published on the forfeiture website for 30 days, beginning on March 31, 2012. (*Id.*) A copy of the notice was attached to the Declaration of Publication, and it described the property with reasonable particularity by the amount of the Defendant Funds. (Doc. 10 at 3.) The notice clearly stated the time requirements to file a claim and an answer. (*Id.*) Further, the notice provided the name of the attorney to be served with any claim and answer. (*Id.*) Thus, the Supplemental Rule's notice-content requirements have been satisfied. Fed. R. Civ. P. Supp. R. G(4)(ii)(A)–(C). Additionally, the notice was published for 30 consecutive days from March 31, 2012, through April 29, 2012, on the forfeiture website, which satisfies the Supplemental Rule's notice requirements with regard to frequency and means. (Doc. 10 at 4.)

### c. Personal Notice

When the Government knows the identity of the property owner, the Due Process Clause of the Fifth Amendment requires "the Government to make a greater effort to give him notice than otherwise would be mandated." *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998). In such cases, the Government must attempt to provide notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action.

*Dusenbery v. United States*, 534 U.S. 161, 168 (2002); *see also* Fed. R. Civ. P. Supp. R. G(4)(b). "Reasonable notice, however, requires only that the [G]overnment attempt to provide actual notice; it does not require that the [G]overnment demonstrate that it was successful in providing actual notice." *Mesa Valderrama v. United States* 417 F.3d 1189, 1197 (11th Cir. 2005); *Real Property*, 135 F.3d at 1316.

The Supplemental Rules indicate that the Government must send notice of the forfeiture action "to any person who reasonably appears to be a potential claimant on the facts known to the government." Fed. R. Civ. P. Supp. R. G(4)(b)(i). The notice must include the following information: the date when the notice is sent; a deadline for filing a claim that is at least 35 days after the notice is sent; that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and the name of the government attorney to be served with the claim and answer. *Id.* Here, the Government provided notice of the forfeiture action by mailing copies of the required documentation, via both certified and first class mail, to Mark Bagdasarian and Maureen Bagdasarian at their last known address, and signed certified mail receipts signed by Mark Bagdasarian were received by the Government. (*See* Rodriguez Decl. ¶¶ 5–6 and Exs. A & B.) Mark Bagdasarian was also sent notice to his defense counsel. (*See id.* ¶ 7.) Therefore, reasonable attempts at serving notice on the potential claimants were made.

### d.    The Time to File a Claim or an Answer

Pursuant to the Supplemental Rules, any person who asserts an interest in or a right in a forfeiture action must file a claim with the Court within the time specified by the direct notice. Fed. R. Civ. P. Supp. G(4)(b)(ii)(B), (5)(a)(ii)(A). Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing in the forfeiture proceeding. *Real Property*, 135 F.3d at 1317.

Here, more than 30 days have passed since the completion of publication, and more than 35 days have passed since the date that the known potential claimants were provided direct notice of the Government's complaint in this action. Accordingly, the time to file a claim has

expired, and pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of the Court properly entered defaults against Mark Bagdasarian, and Maureen Bagdasarian.[3]

### e. Conclusion

The Court finds that the Government has met the procedural requirements applicable to civil *in rem* forfeiture actions as set forth in 18 U.S.C. § 983, the Supplemental Rules, and the Local Rules for the U.S. District Court for the Eastern District of California. This favors the entry of default judgment and the issuance of a final judgment in forfeiture to vest in the United States all right, title, and interest in the Defendant Funds.

### 3. Discretionary *Eitel* Factors

Beyond satisfaction of the procedural requirements, the discretionary *Eitel* factors outlined by the Ninth Circuit also favor granting the Government's motion for default judgment. First, the Government would be prejudiced by the denial of its motion, spending additional time and effort litigating an action in which the claimants have withdrawn their claims. Second, the Government's claims appear to have merit. Third, as set forth above, the Government has adhered to the procedural requirements of a forfeiture action *in rem*, including the filing of a sufficient complaint. Fourth, the sum of money in dispute here is not substantial enough to warrant the denial of the Government's motion. Fifth, there are no genuine disputed issues of material fact. Sixth, it does not appear that the failure of any other claimant to answer is due to excusable neglect. Finally, although merits-based decisions are always preferred, it is not practical, where, as here, the claimants have withdrawn their claims. Accordingly, there is no impediment to default judgment sought by the Government and the Court will recommend that the Application be granted.

//

//

---

[3] Mark Bagdasarian and Maureen Bagdasarian timely filed their claim and answer, but they have been withdrawn. (*See* Docs 15 & 16.)

## V. CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, this Court RECOMMENDS that:

1.      The Government's Ex Parte Application for Entry of Default Judgment against the interests of Mark Bagdasarian and Maureen Bagdasarian (Doc. 21) be GRANTED;

2.      The Clerk of the Court enter a final judgment of forfeiture pursuant to 21 U.S.C. § 881(a)(6), forfeiting all right, title, and interest in the Defendant Funds to the United States to be disposed of according to law; and

3.      Within ten (10) days of service of an order adopting these findings and recommendations, the United States shall submit a proposed final judgment of forfeiture consistent with the findings and recommendations and order adopting them.

These Findings and Recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code § 636(b)(1)(B).  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's Findings and Recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F. 3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F. 2d 1391, 1394 (9th Cir. 1991)); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:  __**October 24, 2017**__                    _____/s/ *Sheila K. Oberto*_____
                                                            UNITED STATES MAGISTRATE JUDGE